**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TOUFIC BOUTROS, ) | |
| ) | CASE NO.    1:09-cv-02574 |
| Plaintiff, ) | |
| ) | |
| v.           ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Toufic Boutros ("Boutros") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Boutros's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision of the Commissioner be AFFIRMED.

**I.  Procedural History**

Born on April 28, 1958 and age fifty at the time of his administrative hearing, Boutros is a "person closely approaching advanced age" under the social security regulations.  *See* 20 C.F.R. §§ 404.1563(d) & 416.963(d).  Boutros has a high school diploma and past relevant work as a small business owner and produce store clerk.  (Tr. 19-20.)

On May 30, 2006, Boutros filed an application for POD, DIB, and SSI alleging a disability onset date of February 6, 2006, and claiming that he was disabled due to back problems, arthritic conditions, and hearing loss.  His application was denied both initially and upon reconsideration.  Boutros timely requested an administrative hearing.

On December 8, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Boutros, represented by counsel, testified.  Kathleen Reis testified as an impartial vocational expert ("VE").  On January 29, 2009, the ALJ found Boutros was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

**II.  Standard for Disability**

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Boutros was insured on his alleged disability onset date, February 6, 2006, and remained insured through December 31, 2008.  (Tr. 15.)  Therefore, in order to be entitled to POD and DIB, Boutros must establish a continuous twelve month period of disability commencing between the two dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

---

[1] The entire five-step process entails the following: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### III.  Summary of Commissioner's Decision

The ALJ found Boutros established medically determinable, severe impairments due to history of L2 compression fracture, small right heel spur and arthritic changes in the right ankle, lateral epicondylitis of the right elbow, and hearing loss.  (Tr. 15.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Boutros is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Boutros is not disabled.

### IV.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### V.  Analysis

Boutros claims the ALJ erred by: (1) finding that he had not met or equaled a Listing

without consulting a medical expert ("ME"); (2) failing to conduct a proper pain and credibility analysis; and, (3) posing an inaccurate hypothetical to the VE.

***Medical Expert***

Boutros argues that the ALJ erred by finding that he had not at least equaled a Listing without consulting an ME. (Pl.'s Br. at 6-8.) Therefore, Boutros argues, the ALJ's decision was insufficient to withstand the substantial evidence standard. *Id*.

The ALJ found as follows:

No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that Mr. Boutros does not have an impairment or combination of impairments that meet or medically equal a listed impairment, I also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 404.1527(f), 4l6.927(f) and Social Security Ruling 96-6p).

(Tr. 16.)

Boutros argues that he clearly equaled Listing 2.08 - Hearing impairments.[2] (Pl.'s Br. at 6-7.) In 2008 at the time of Boutros's disability review, Listing 2.08 required "[a]verage hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, ***in the better ear***, determined by the simple average of hearing

---

[2] Boutros also suggests that he met Listing 1.04, but fails to expand upon this assertion through argument. It is not the Court's function to comb through the entire record to develop a related argument on the claimant's behalf or to take the portions of the record cited by counsel and attempt to craft an argument that supports the general issues she referenced in the most perfunctory manner. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). As such, Boutros's "argument" with respect to Listing 1.04 is deemed waived.

threshold levels at 500, 1000 and 2000 hz." Edward Fine, M.D., Ph.D., performed an audiometric evaluation, which revealed that Boutros had a pure tone average ("PTA") on the right of 62 and on the left of 70. (Tr. 232-33.)[3] "His hearing threshold levels on the left include 55 dB at 500 Hz. This drops down to 95 dB at 2000 Hz. On the right, his hearing threshold level at 500 Hz is 90 dB and on the left at 2000 Hz is down to 100 dB." *Id*. Pursuant to Listing 2.08, it is the score of the better ear that matters in determining whether the listing is met. Dr. Fine clearly found that Boutros's better ear, his left ear, had a PTA of 70. Furthermore, Listing 2.08 requires that the hearing loss of a claimant not be restorable by a hearing aid before it is met. The ALJ specifically noted that Boutros had not used a hearing aid in many years, though there was some evidence that its use was beneficial. (Tr. 19.) As such, the ALJ's conclusion that no treating or examining physician found Boutros's impairments to meet the severity of a listing level was supported by substantial evidence.

Furthermore, "[f]or cases at the Administrative Law Judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the Administrative Law Judge or Appeals Council." 20 C.F.R. § 404.1526. Although the ALJ should consider opinions from medical sources concerning whether a claimant's impairments meet or equal the requirements of any listing, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). It is well established that an "ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001). Citing 20 C.F.R. §§ 404.1517, 416.917, the *Foster*

---

[3] The PTA of 62 in the right ear may be a typographical error, as Dr. Fine concluded that hearing loss in the right ear was worse than in the left ear. Moreover, the chart attached to Dr. Fine's letter clearly denotes a PTA of 92 in the right ear. (Tr. 234.)

6

court noted that "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we **may** ask you to have one or more physical or mental examinations or tests." *Id*. (emphasis in original). Clearly, the ALJ has discretion to consult an ME, but is *not* required to do so. There was sufficient evidence regarding Boutros's impairments in the record for the ALJ to evaluate the level of his hearing deficiencies. The ALJ did not abuse his discretion in declining to call for an ME. As such, Boutros's first assignment of error is without merit.

*Pain and Credibility Analysis*

Boutros also argues that the ALJ failed to conduct a proper pain and credibility analysis. (Pl.'s Br. at 8-11.) Specifically, Boutros argues that the ALJ's pain analysis did not comport with the procedures established by Social Security Ruling ("SSR") 96-7p. *Id*.

It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See*

7

*Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").

The ALJ recognized that he had to consider all symptoms in the record according to the applicable rulings and regulations, expressly including SSR 96-7p. (Tr. 16.) The ALJ further recognized that he must follow the two-step process described above, and "must make a finding on the credibility of [Boutros's] statements based on a consideration of the entire case record." *Id*. To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.

8

*See* SSR 96-7p. Beyond medical evidence, there are seven factors that the ALJ should consider.[4] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005). The ALJ's decision contains the following discussion regarding credibility:

> After careful consideration of the evidence, I find that Mr. Boutros' medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of Mr. Boutros' alleged pain, he fell down the stairs after slipping on ice in February 2006 and suffered an acute compression fracture at L2. There were facet hypertrophic changes on the left at L5-S1 causing severe foraminal stenosis (Exhibit 2F at 21-23). He was fitted with a back brace and discharged with instructions to receive physical therapy (Exhibit 2F at 4).
>
> \*\*\*
>
> The record establishes that Mr. Boutros is able to care for his two sons (Exhibit 12F) and walk for exercise (Exhibit 17F at 11). At the hearing, he testified that he visits friends, talks on the phone, takes short walks, drives, attends church occasionally, and helps his sons with their homework. He said that he does no housework at all. While he clearly has a decreased range of daily activities, the objective evidence simply does not support his allegations that he cannot do anything at all.
>
> In applications, Mr. Boutros denied any side effects from medication (Exhibits 7E

---

[4] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 375 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

at 4, liE at 4). At the hearing, in contrast, Mr. Boutros testified that Percocet sometimes makes him sleepy, but his testimony did not establish any significant limitation in his daily activities. He also testified that he is sleepy during the day if he eats food that keeps him up with heartburn during the night.

Although Mr. Boutros does have hearing difficulties, he admitted to a Social Security Administration representative that he had a hearing aide but stopped using it when he lost it. That same representative noted that Mr. Boutros had no problems hearing on the phone (Exhibit 9E). Mr. Boutros told medical professionals in February 2007 that he had hearing aids but that they were broken and needed to be fixed (Exhibit 15F at 7).

Mr. Boutros testified that he uses two braces on his back. The evidence of record shows that the braces were recommended by medical professionals (Exhibit 2F at 24). I considered the use of the braces in assessing the residual functional capacity contained herein. However, there is nothing associated with his use of back braces that justifies any further reduction in the residual functional capacity.

The most compelling factor in this case is the absence of abnormal findings from treating or examining professionals. Mr. Boutros has not sought a great deal of treatment, in part because he has no insurance, but even the treatment he has received has been routine and conservative. He has not been offered surgery and the tenderness in his back has been minimal on examination. Clinical signs have been generally unremarkable and State Agency doctors felt he could perform medium work. No treating source has offered limitations greater than those I have assessed within.

***

I note that although Dr. Fine found such [hearing] limitations, he did not say Mr. Boutros could not work. There is evidence that he could benefit from a hearing aid. However, the evidence shows that he lost his hearing aid some years ago and he testified that he cannot afford to buy a new one. Despite this, he had no problems understanding his attorney during the hearing. He was able to hear me as long as I spoke loudly. I limited Mr. Boutros to tasks that can be performed independently and no direct interpersonal interaction with the general public to accommodate his hearing difficulties in the current uncorrected state. I relied on Dr. Fine's opinion in so doing. No other limitations related to his hearing are warranted. The hearing problem significantly predates his alleged onset date and he was able to work with it then. There is no reason he could not work with it now, within the limitations I find.

(Tr. 16-19.)

The ALJ's opinion discussed Boutros's daily activities, his medications and their effect on him, the conservative nature of the treatment received, the effect of the use of back braces, and the opinions of various physicians regarding Boutros's functional limitations and objective medical observations. The ALJ was not required to discuss each and every factor. As such, the ALJ's opinion contains a sufficient pain and credibility analysis and Boutros's assignment of error is without merit.

*Inaccurate Hypothetical*

Boutros asserts that the ALJ's hypothetical did not accurately portray all of his limitations, and, therefore, the VE's testimony does not constitute substantial evidence. (Pl.'s Br. at 11-12.) Specifically, Boutros claims that the ALJ erroneously omitted the following limitations: (1) no significant verbal communication; and, (2) no exposure to even moderate noise.[5] *Id.* (citing Tr. 251-52.)

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial

---

[5] Boutros believes these limitations should be included based upon findings by Paul Heban, M.D, in a physical RFC assessment completed on January 19, 2007. Dr. Heban, while finding that there were no environmental limitations established, indicated that Boutros should not be exposed to moderate noise. (Tr. 252.)

11

evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

> The ALJ posed the following hypothetical to the VE:
>
> I'd like you to assume the person could perform light work which involves lifting and carrying 20 pounds occasionally, 10 pounds frequently, stand and walk a total of 6 hours in 8, sit a total of 6 in 8, and after either sitting, standing or walking for an hour, this person would need to change positions for a minute, and then preferably, no direct interpersonal contact with the public. And I suppose we could do, you know, tasks that can be – this is because of the hearing problem, tasks that can be performed independently.

(Tr. 76.)

The ALJ assigned some weight to Dr. Heban's opinion, but did not adopt the hearing related limitations he described in their entirety. (Tr. 19.) In his opinion, the ALJ specifically stated that he limited Boutros "to tasks that can be performed independently and no direct interpersonal communication with the general public to accommodate his hearing difficulties in the current uncorrected state ... [but that] [n]o other limitations related to his hearing are warranted." (Tr. 19.) To a significant extent, it appears that the prohibition against communication with the public and the need to work independently would necessarily include the "no significant verbal communication" limitation described by Dr. Heban. Furthermore, the VE testified that all of the jobs he felt were available for the hypothetical individual "could be done without requiring more than a minimum of direct verbal communication." (Tr. 80.) The hypothetical did not expressly incorporate a noise related limitation, but the ALJ did not appear to accept that limitation as true and significant. Because the ALJ's hypothetical need only incorporate limitations that he finds to be warranted by the record, Boutros's assignment of error is without merit.

## VI.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White  
U.S. Magistrate Judge

Date: August 9, 2010

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**